**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**


IAN M. RUSSELL,              :
                                :
            Plaintiff,     :    CIVIL ACTION
                                :
     v.                  :    NO. 08-cv-5442
                                :
CITY OF PHILADELPHIA, et al., :
                                :
            Defendants.   :

<u>**MEMORANDUM AND ORDER**</u>

**Joyner, J.**                                         **May 19, 2010**

     This case is before the Court on Defendants' Motion for Summary Judgment (Doc. No. 39).  For the reasons set forth below, the Motion is GRANTED.

<u>**Factual Background**</u>

     Plaintiff is an inmate at the Philadelphia Industrial Correctional Center ("PICC"), an institution run by the Philadelphia Prison System, which is an agency of the City of Philadelphia.  Defendants are the City of Philadelphia, the Philadelphia Prison System, the PICC, Commissioner of Prisons Louis Giorla, the former Warden of the PICC Joyce Adams, and then-Major Karen Bryant, who is now the Deputy Warden of the PICC.  Although Plaintiff initially named Mayor Michael Nutter as a defendant, these allegations were dismissed by this Court's Order of January 13, 2009.

     Plaintiff's Complaint, brought under 42 U.S.C. § 1983, does

not proceed in a narrative form, but rather lists a series of events that allegedly violated his rights. First, Plaintiff was removed from his employment in the law library on May 30, 2008. Second, on the same day, Plaintiff was removed from the "maximum" side of the facility and placed on the "medium" side.[1] Third, on June 12, 2008, Plaintiff was subjected to a strip and cavity search by female guards during a single-cell "shakedown." The corrections officers also removed all of Plaintiff's legal and personal paperwork during this shakedown and then placed Plaintiff in administrative segregation. Plaintiff states that he was not given any explanation for his placement in administrative segregation until his third appearance before a Special Management Status Review Committee. At that point, he was informed that he had been placed in administrative segregation because of his violation of the prison policy relating to inmate media access. Fourth, Plaintiff states that he was denied access to the courts to submit his Allowance of Appeal to the Pennsylvania Supreme Court.

Although his Complaint does not frequently specify which Defendants committed the allegedly unconstitutional acts, Plaintiff does name several wrongs committed by specific Defendants. First, Plaintiff alleges that Defendant Giorla has

---

[1] Defendants note in their reply brief that there is presently no difference in security between the "maximum" and "medium" sides of the prison, but that the names have survived, somewhat anachronistically, from a period when both men and women were housed in the PICC.

violated his rights by denying his request to be reinstated to his former employment in the law library and to pay him lost wages. Second, Plaintiff states that the City of Philadelphia, through its administration, violated the First, Eighth, and Fourteenth Amendments to the United States Constitution, as well as Article I, Sections 3, 13, and 15 of the Pennsylvania Constitution. These, however, are not the only claims that Plaintiff brings, and more detail will be provided in the discussion section below.

Plaintiff pursued these claims through the appropriate administrative channels before filing his Complaint in this Court on December 3, 2008. Defendants filed their Motion for Summary Judgment on February 26, 2010, claiming various immunities from suit on behalf of all Defendants as well as contesting the merits of Plaintiff's allegations. Plaintiff responded to this Motion on March 25, 2010, and in doing so greatly expanded on what was in his initial Complaint. Defendants did not object to Plaintiff's late filing of his response or to his addition of seemingly new claims at this late stage of the litigation, but did file a reply brief with this Court on April 23, 2010.

## Standard

When a party files for summary judgment, "[t]he judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there

is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In making a summary judgment determination, all inferences must be viewed in the light most favorable to the non-moving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  When the non-moving party is the plaintiff, he must "make a showing sufficient to establish the existence of [every] element essential to [his] case," as he will bear the burden of proof on each element of his claims at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  In order to survive a motion for summary judgment, the non-moving party cannot rely solely on the unsupported allegations found in the pleadings.  Id. at 324.  Instead, the non-moving party must raise more than "some metaphysical doubt" as to a material fact. Matsushita, 475 U.S. at 586.  In making a decision as to whether there is a "genuine" issue of fact, the court must determine "whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

## Discussion

While the pleadings of pro se litigants are held to less stringent standards than those drafted by lawyers, Haines v. Kerner, 404 U.S. 519, 520 (1972), a pro se Plaintiff still must meet the above standard to survive a motion for summary judgment.

Liberally construing Plaintiff's Complaint and Response to Defendants' Motion for Summary Judgment, we will treat Plaintiff's Complaint as raising a First Amendment retaliation claim, free exercise of religion claims, Fourth Amendment claims for improper searches, an Eighth Amendment claim for cruel and unusual punishment, Fourteenth Amendment Due Process claims, a Fourteenth Amendment Equal Protection claim under a "class of one" theory, claims under Article I, §§ 13 and 15 of the Pennsylvania Constitution, and a claim for negligence.

**Philadelphia Prison System and the PICC**

As an initial matter, Defendants' Motion for Summary Judgment must be granted in favor of the Philadelphia Prison System and the PICC. Individual departments of the City of Philadelphia cannot be sued separately; instead the suit must be brought against the City of Philadelphia itself. 53 Pa. Stat. Ann. § 16257 (West 1998). Any claims brought against a department of the City of Philadelphia, therefore, must be dismissed as a matter of law. Regalbuto v. City of Phila., 937 F. Supp. 374, 377 (E.D. Pa. 1995). The Philadelphia Prison System is a department of the City of Philadelphia, and operates the PICC. Given that no suits can be maintained against these two Defendants, Summary Judgment must be granted in their favor.

**City of Philadelphia**

Summary judgment must also be granted in favor of the City

of Philadelphia on all of Plaintiff's federal constitutional claims.  First, Plaintiff cannot maintain a claim under 42 U.S.C. § 1983 solely on a respondeat superior theory of liability.  Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978).  In order to sue the city, Plaintiff needs to establish that his injury was the result of some official policy or custom of the city.  Id. at 690-91.  In this case, because Pennsylvania law requires all suits against individual departments of the city to be brought against the city, it would be sufficient for Plaintiff to demonstrate that a policy or custom of the Philadelphia Prison System or the PICC had violated his constitutional rights.  Plaintiff, however, has made no such allegation.  Although Plaintiff does appear to point toward prison policies in a few areas, he never alleges that the policy resulted in a violation of his constitutional rights, but rather alleges that his rights were violated when individual employees deviated from these policies.  Further, Plaintiff never alleges that it was the custom of any department to ignore these policies, much less provides evidence to support such an assertion.  Instead, Plaintiff levies his allegations against individual actors within the PICC.  As this is not sufficient to make the City of Philadelphia liable for any constitutional violation, summary judgment must be granted in its favor on all of Plaintiff's § 1983 claims.

**Individual Defendants**

Plaintiff also makes numerous claims against the individual Defendants named in this case.  These individuals assert that they are entitled to qualified immunity.  A government employee is entitled to qualified immunity if, during the course of performing her duties, she was performing a discretionary function and her conduct did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 & n.30 (1982).  We will first address whether any of Plaintiff's claimed constitutional violations can survive summary judgment, and if any can, we will then proceed to consider whether Defendants' alleged actions violated clearly established constitutional principles, thereby forfeiting any qualified immunity for such violations.

<u>First Amendment Retaliation</u>

Plaintiff raises a First Amendment retaliation claim, as he asserts that he was punished by being placed in administrative segregation for exercising his First Amendment right to free speech.  Importantly, an inmate does not lose his First Amendment rights upon conviction, but, rather, "retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system."  Pell v. Procunier, 417 U.S. 817, 822

(1974).  It is generally considered a red flag if the prison

seeks to regulate not based on the subject of the speech, but the

content of the speech.  <u>Main Rd. v. Aytch</u>, 522 F.2d 1080, 1087

(3d Cir. 1975).  To maintain a First Amendment retaliation claim

the plaintiff must prove that he engaged in constitutionally

protected activity, that the government retaliated against him,

and that there was a causal connection between the protected

activity and the government retaliation.  <u>Eichenlaub v. Twp. of

Ind.</u>, 385 F.3d 274, 282 (3d Cir. 2004).  The adverse action taken

by the government must be enough to "deter a person of ordinary

firmness from exercising his [constitutional] rights," <u>Allah v.

Seiverling</u>, 229 F.3d 220, 225 (3d Cir. 2000) (citation omitted),

but the retaliatory act need not be such that it would

independently be a constitutional violation if it was not

undertaken for retaliatory purposes.  <u>Rauser v. Horn</u>, 241 F.3d

330, 333 (3d Cir. 2001).  In the prison setting, specifically,

the Third Circuit has instituted a burden-shifting analysis to

determine whether a causal connection exists between the speech

and the allegedly retaliatory action.  Under this framework, the

plaintiff first must show that the infringement of First

Amendment rights was a substantial or motivating factor for the

adverse action, and then the defendant is required to demonstrate

by a preponderance of the evidence that he would have conducted

himself in the same manner without the impermissible retaliatory

objective.  Id.

Plaintiff has met the first requirement of a retaliation claim by alleging that his First Amendment rights were violated. Plaintiff asserts in his Response to Defendants' Motion for Summary Judgment that he engaged in constitutionally protected activity by speaking out against not being paid overtime for his twelve-hour-per-day shifts in the law library.[2]  In addition, Plaintiff discusses helping another inmate send letters to Judge Renee Hughes, who had signed an order prohibiting such communication.  In both of these situations, Plaintiff appears to allege that he was punished for exercising his First Amendment right to free speech.  Although we do not believe that Plaintiff can assert any right to protected speech based on his assisting another inmate in violating a court order, his speech regarding overtime payment for his law library work qualifies as protected speech.  This speech is not inconsistent with the prison's penological objectives, and very well may only be objectionable given its content.  Plaintiff could, therefore, establish at trial that he engaged in constitutionally protected activity.

Turning to the second prong of his retaliation claim,

---

[2]Although Plaintiff asserts that he was punished for protecting his Eighth Amendment right against involuntary servitude, the Eighth Amendment to the United States Constitution contains no provision concerning involuntary servitude, but rather prevents cruel and unusual punishment.  The Thirteenth Amendment does prohibit involuntary servitude, but this prohibition excludes any labor required as punishment for a crime.  United States v. Kozminski, 487 U.S. 931, 943-44 (1988).  To the extent that Plaintiff attempts to rely on the Eighth or Thirteenth Amendment to bring his present claim, he is, therefore, prevented from doing so.

Plaintiff has alleged that he suffered retaliation that a rational jury could find to be sufficient to deter a reasonable person from exercising his First Amendment rights. Again, Plaintiff is not entirely clear as to what retaliation he suffered. It appears that Plaintiff asserts that he was harmed by both his removal from his law library job and his placement in administrative segregation. We believe that genuine issues of material fact remain on both of these alleged harms as to whether the actions taken would deter a person of reasonable firmness from exercising his First Amendment rights. Although the removal from one job and placement in another with equal pay likely would not be sufficient by itself to state a claim for retaliation, the period of delay between the ending of one job and the beginning of the next, which Plaintiff alleges was a period of several weeks in this case, may be sufficient. Further, placing an individual in administrative segregation is certainly sufficient grounds for a reasonable jury to find that the act would deter an individual from exercising his rights.

Plaintiff's claim, however, fails as a matter of law on the third prong of a retaliation cause of action. First, if Plaintiff has submitted evidence that demonstrates that an impermissible motive was a substantial or motivating factor for the adverse conduct and thereby shifted the burden to Defendants, he has only barely done so. Plaintiff relies extensively on

accusatory and conclusory language and does not provide any further factual support for these assertions.  This determination is not dispositive, however, as Defendants would have still taken the allegedly retaliatory actions regardless of Plaintiff's exercise of his First Amendment rights.  First, Defendants have demonstrated, and Plaintiff's Complaint itself confirms, that the reason for Plaintiff losing his law library job was that he assisted another inmate in violating a court order.  As noted above, Plaintiff's actions in relation to the violation of the court order were not constitutionally protected speech, and Plaintiff's removal from his job on this ground, therefore, does not have a causal connection with Plaintiff's exercise of his First Amendment rights.  Further, Defendants have produced voluminous evidence to support their proposition that Plaintiff was placed in administrative segregation not because of his speech, but because of his possession of gambling paraphernalia. This is further supported by the chronology of events, as Plaintiff was placed in administrative segregation the day after the search of his cell was conducted that led to the discovery of the gambling contraband.  Given this record, we simply do not believe that a reasonable jury could find a causal connection between Plaintiff's protected speech and his placement in administrative segregation or his removal from his law library job.  Therefore, we must grant summary judgment in favor of

Defendants on this count.

Free Exercise of Religion

Plaintiff also brings claims for the denial of his right to freely exercise his religion. He brings these under the First Amendment to the U.S. Constitution, Article I, § 3 of the Pennsylvania Constitution, and the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"). All of these provisions are only implicated if the plaintiff demonstrates the existence of a sincerely held religious belief. See United States v. Seeger, 380 U.S. 163, 185 (1965) (requiring a sincerely held religious belief to implicate the First Amendment's protections); Washington v. Klem, 497 F.3d 272, 277 (3d Cir. 2007) ("RLUIPA does permit inquiry into the sincerity of a prisoner's religious beliefs."); Meggett v. Pa. Dep't. of Corr., 892 A.2d 872, 878 (Pa. Commw. Ct. 2006) (noting that Pennsylvania's Free Exercise Clause can be interpreted using First Amendment precedents). Under the Federal Constitution's Free Exercise Clause, any prison regulation that is alleged to burden an inmate's ability to practice his or her religion is reviewed under a reasonableness standard. Turner v. Safley, 482 U.S. 78, 87 (1987). In determining reasonableness, the court must examine whether there is a rational connection between the prison regulation and the legitimate government interest that it is seeking to advance, whether the inmate retains any alternate

means to exercise the right, the costs of accommodating the prisoner's right, and whether there are any alternative policies that would accommodate the prisoner's religious exercise at a "de minimis cost to valid penological interests."  DeHart v. Horn, 227 F.3d 47, 49 (3d Cir. 2000).  Although the Pennsylvania Constitution is free to protect a broader range of interests than the Federal Constitution, it has not done so in considering free exercise claims, and the Pennsylvania courts have used federal precedent in interpreting claims brought under Article I, § 3 of the Pennsylvania Constitution.  Meggett, 892 A.2d at 878. RLUIPA, however, has a heightened standard, and prevents the government from "impos[ing] a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability," unless the government establishes that it is in furtherance of a "compelling governmental interest" and is the "least restrictive means of furthering that compelling governmental interest."  42 U.S.C.A. § 2000cc-1 (West 2003).  A "substantial burden" exists when

> 1) a follower is forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally available to other inmates versus abandoning one of the precepts of his religion in order to receive a benefit; OR 2) the government puts substantial pressure on an adherent to substantially modify his behavior and to violate his beliefs.

Klem, 497 F.3d at 280.

Plaintiff's claims under these provisions relate to his inability to participate in communion, listen to religious programs on a transistor radio, or possess a bible during his approximately one-month period in administrative segregation. Plaintiff, however, has failed to introduce any evidence to allow this Court, or a jury, to conclude that his sincerely held religious beliefs require him to participate in communion, listen to religious programs, or read the bible on a daily or weekly or other regular basis. Plaintiff was only in administrative segregation for a short period of time, and has not pled or otherwise demonstrated that this short interruption in his participation in any of the above activities went against any of his sincerely held religious beliefs. Plaintiff has not alleged that he was continuously denied any of these things, or that the denial of his participation in any of these things was repeated or for an extensive period of time. As Plaintiff has not even alleged, must less shown a genuine issue of fact, that his sincerely held religious beliefs require his participation in any of these events on a specific timetable or at certain regular intervals, we cannot allow his claims to continue to trial.

<u>Fourth Amendment</u>

Plaintiff next brings a Fourth Amendment claim for the search of his jail cell and for being subjected to a strip and cavity search that were not performed in line with prison policy.

In order for the Fourth Amendment's protections to apply, the plaintiff first must show that he had a reasonable expectation of privacy in the thing or place that was searched. Hudson v. Palmer, 468 U.S. 517, 525 (1984). Finding that there is no such reasonable expectation inside much of any prison, the Supreme Court has stated that "the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell." Id. at 526. Turning to searches of the prisoner's person, inmates do retain a reasonable expectation of privacy in their bodies, but a strip search can still be reasonable, and, therefore, not run afoul of the Fourth Amendment, even if it is conducted without probable cause to believe that the inmate is attempting to secrete contraband. Bell v. Wolfish, 441 U.S. 520, 558-60 (1979). In determining whether searches of an inmate are reasonable, the court must weigh "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." Id. at 559.

In the present case, Plaintiff appears to charge Defendants with violating his Fourth Amendment rights both by searching his cell and by subjecting him to a strip and cavity search. As noted above, Plaintiff does not have a reasonable expectation of privacy in his prison cell, and any claim that his Fourth Amendment rights were violated by the cell search must fail as a

matter of law.  Regarding Plaintiff's strip and cavity search,

none of the individual Defendants are alleged to have conducted,

authorized, or otherwise participated in the strip or cavity

search.  Rather, Plaintiff only alleges that Sargent Roundtree

and two unnamed female prison guards were involved in these

searches.  As respondeat superior cannot be a basis for liability

under a § 1983 claim, City of Canton v. Harris, 489 U.S. 378, 385

(1989), none of the individual Defendants, even if supervisors of

the individuals who conducted the search, can be vicariously

liable for the conduct in this case.  In the absence of any

material issue of fact involving any of the named Defendants, the

individual Defendants are entitled to summary judgment on these

allegations as well.

Eighth Amendment

    The Eighth Amendment prevents the imposition of cruel and

unusual punishment.  Whether punishment is considered cruel and

unusual is determined by evolving standards of decency.  Rhodes

v. Chapman, 452 U.S. 337, 346 (1981).  Complaints about prison

conditions are frequently litigated under the Eighth Amendment,

and the Third Circuit has established that deficient prison

conditions rise to a constitutional violation "only when an

inmate is deprived of 'the minimal civilized measure of life's

necessities.'  Although inmates are, undeniably sent to prison as

punishment, the prison environment itself may not be so brutal or

unhealthy as to be in itself a punishment." <u>Young v. Quinlan</u>,
960 F.2d 351, 359 (3d Cir. 1992) (citations omitted) (superseded
by statute on other grounds).  A violation of the Eighth
Amendment requires both an act that rises to the level of cruel
and unusual punishment and a culpable state of mind.  <u>Wilson v.
Seiter</u>, 501 U.S. 294, 298-99 (1991).  The Supreme Court has
established that "deliberate indifference" is necessary to find
culpability, and this requires that the defendant knew of an
excessive risk and disregarded it.  <u>Farmer v. Brennan</u>, 511 U.S.
825, 834, 837 (1994).

    Plaintiff appears to allege that his Eighth Amendment rights
were violated in two separate ways.  First, he asserts that his
housing in administrative segregation constituted cruel and
unusual punishment, and, second, he asserts that Defendants'
failure to allow him to prepare his own food even though they
knew that he suffered from post-traumatic stress disorder
violated his constitutional rights.  Beginning with Plaintiff's
claim regarding administrative segregation, Defendants assert
that placement in administrative segregation is not a per se
violation of the Eighth Amendment, and that Plaintiff has failed
to allege any facts that demonstrate that the administrative
segregation to which he was subjected deprived Plaintiff of any
of life's necessities or placed any particular hardship on him.
We agree with Defendants on this point.  The Constitution

17

certainly does not prohibit prisons from establishing isolated, administrative housing units, and Plaintiff has not alleged that he was denied "the minimal civilized measure of life's necessities" in PPIC's administrative segregation unit.  There is simply no evidence provided by Plaintiff that could lead to the conclusion that the administrative segregation to which Plaintiff was subjected differed in any way from any of the other administrative segregations that have been upheld by numerous courts.  E.g., Griffin v. Vaughn, 112 F.3d 703, 709 (3d Cir. 1997).  There is no genuine issue of material fact, therefore, as to whether Plaintiff's confinement in administrative segregation violated the Eighth Amendment, and summary judgment is appropriate in Defendants' favor on this issue.

Plaintiff's complaint that his Eighth Amendment rights were violated by not being permitted to prepare his own food also cannot survive as a matter of law.  Plaintiff claims that he suffered from post-traumatic stress disorder that resulted from an incident in 2006 when he found a cockroach in his food.  We simply cannot find that Defendants' refusal to allow Plaintiff to prepare his own food rises to the level of cruel and unusual punishment.  Finding a cockroach in one's food is, undeniably, disgusting.  Plaintiff, however, does not allege that this was a regular occurrence, or that it was an intentional act, or that the prison kitchen was dirty and bug infested.  Regrettably, even

the cleanest of kitchens may attract bugs, and when cooking for large groups of people it is possible that bugs may enter the food undetected. As a one time occurrence, however, this is simply not an Eighth Amendment violation, even if it did cause Plaintiff to suffer psychological repercussions. Further, it is not cruel and unusual punishment to prevent Plaintiff from being able to prepare his own food even if he is suffering from post-traumatic stress disorder. As a necessary incident of prison life, Plaintiff cannot expect to be able to control all aspects of his food, from purchase to consumption, and it does not violate the Eighth Amendment for Defendants to prevent him from doing so. Even if Defendants may have been deliberately indifferent to the effects that this would have on Plaintiff, there is no act that rises to the level of an Eighth Amendment violation. This claim, therefore, must also be decided in Defendants' favor.

Fourteenth Amendment Due Process Violations

The Fourteenth Amendment protects against deprivations of life, liberty, or property without the due process of law. As with many other constitutional rights, however, the reach of the Fourteenth Amendment is curtailed within a prison. This is especially true of a prisoner's liberty interest. "[G]iven a valid conviction, the criminal defendant has been constitutionally deprived of his liberty to the extent that the

State may confine him and subject him to the rules of its prison system . . . ." Meachum v. Fano, 427 U.S. 215, 224 (1976). In general, a change in confinement, even if it has a "substantial adverse impact," will not infringe any liberty interest that the prisoner may have. Id. Further, placing an inmate in solitary confinement does not, by itself, give rise to a liberty claim under the Due Process Clause. Sandin v. Conner, 515 U.S. 472, 485-86 (1995). An inmate may only claim a liberty interest if the prison "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484. Importantly, the existence of prison guidelines on a subject will not automatically create a protected liberty interest; instead, in order for the guidelines to create a protected liberty interest, they must address a subject involving the imposition of an atypical hardship. Id. at 483-84. In evaluating the existence of a protected liberty interest, therefore, courts must look to the nature of the deprivation alleged, and not simply to the language of the regulation that would create the interest. Torres v. Fauver, 292 F.3d 141, 150 (3d Cir. 2002).

Plaintiff claims that his Due Process rights were violated both in being moved into administrative segregation, and in being removed from his prison job in the law library. Neither one of these claims can survive summary judgment. First, there are no

facts pled that can lead this Court to conclude that Plaintiff had a protected liberty interest in his housing in the general population of the prison.  As discussed above, there was no atypical hardship in Plaintiff's housing in administrative segregation, and the guidelines on the placement of inmates in administrative segregation, therefore, do not address a subject that goes to the imposition of an atypical hardship.  Rather, the prison guidelines that Plaintiff references as providing him with this liberty interest are precisely the sort of generic guidelines that do not provide a protected liberty interest. Given this fact, even if the language of the guidelines appears mandatory, they do not create a liberty interest.  Plaintiff's claim as to his removal from his law library job also must fail. An inmate simply has no protected liberty or property interest in his prison job.  James v. Quinlan 866 F.2d 627, 630 (3d Cir. 1989).  Summary judgment, therefore, will be granted in Defendants' favor on Plaintiff's Due Process claims pursuant to the Federal Constitution's Fourteenth Amendment.

Plaintiff also appears to allege that he was denied access to the courts in violation of the Due Process Clause.  As a threshold matter for bringing such a claim, the plaintiff must show that he was denied access and that he suffered some injury from this denial.  Adegbuji v. Middlesex County, 169 F. App'x 677, 680-81 (3d Cir. 2006).  From Plaintiff's Complaint and

response to Defendants' Motion for Summary Judgment, it is
unclear whether this denial occurred in relation to the filing of
his Allowance of Appeal to the Supreme Court of Pennsylvania, or
whether it refers to actions taken in connection with the present
case.  Defendants, however, have stated, and supported with
conclusive evidence, that Plaintiff did file his Allowance of
Appeal to the Supreme Court of Pennsylvania.  Further, Plaintiff
has not even alleged that he suffered an injury through the "loss
or rejection of a legal claim."  Id. at 681 (citation omitted).
Because Plaintiff has not alleged any injury, summary judgment
will also be granted in Defendants' favor on any claim for a
denial of access to the courts.

Fourteenth Amendment Equal Protection Violation

     Plaintiff also claims that his Equal Protection rights were
violated by being transferred into administrative segregation and
by being removed from his law library job.  Plaintiff brings
these claims as a "class of one."  A claim can be maintained
under the Equal Protection Clause as a "class of one" if the
individual is intentionally treated differently from others
similarly situated without a rational basis.  Vill. of
Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (per curiam).  An
individual does not literally need to be a class of one in order
to proceed under this theory; the focus, instead, is on whether
the plaintiff chooses to allege membership in a class or group.

22

Id. at 564 & n.*. Rational basis review requires that government action, "[a]t a minimum, . . . be rationally related to a legitimate governmental purpose." Clark v. Jeter, 486 U.S. 456, 461 (1988). There is a "strong presumption of validity" when examining a statute under rational basis review, and the burden is on the party challenging the validity of the legislative action to establish that the statute is unconstitutional. FCC v. Beach Commc'ns, Inc., 508 U.S. 307, 314-15 (1993). Finally, when undertaking rational basis review, the party defending the constitutionality of the action need not introduce evidence or prove the actual motivation behind passage, but need only demonstrate that there is some legitimate justification that could have motivated the action. Id. at 315.

Given the circumstances surrounding Plaintiff's Complaint, we cannot allow his claim for an Equal Protection violation to proceed to trial. We simply are not prepared to intrude so far into the day-to-day operations of the prison to say that on any given occasion, the prison could have no rational basis for moving a prisoner into administrative segregation or moving a prisoner into a new job. It would be rational for either of these things to occur based on the behavior of the inmate, the safety of the inmate, or simply the general need for space and workers within the prison system. Since Plaintiff brings this claim under the class-of-one theory, rational basis review

governs, and Defendants need not even demonstrate that one of these potential justifications did apply to their decision to transfer Plaintiff; rather, it is sufficient that Defendants could have had a rational basis for doing so.  In these circumstances, therefore, no issue of material fact remains, and summary judgment is appropriate in Defendants' favor.

<u>Pennsylvania Constitutional Claims</u>

Plaintiff asserts that his rights under the Pennsylvania Constitution have also been violated.  In addition to Article I, § 3, which concerns the free exercise of religion and was discussed above, Plaintiff alleges that Defendants violated Article I, § 13, which prevents excessive bails, fines, and punishments, and Article I, § 15, which prevents the creation of special criminal tribunals.  Further, Plaintiff repeatedly refers to Defendants' "deliberate indifference" in connection with his constitutional claims, and when this is discussed without connection to a particular constitutional provision, it is assumed to implicate Article I, § 13.  <u>Jochen v. Horn</u>, 727 A.2d 645, 649 (Pa. Commw. Ct. 1999).

It is clear that Plaintiff cannot succeed on his claims pursuant to §§ 13 or 15.  First, cruel and unusual punishment under the Pennsylvania Constitution is interpreted using the same standard that is used under the Federal Constitution's Eighth Amendment.  <u>Id.</u>  As discussed above, Plaintiff's claims under the

Eighth Amendment cannot survive summary judgment, and his claim for cruel and unusual punishment under the Pennsylvania Constitution, therefore, must also fail. In regard to his § 15 claim, Plaintiff has not introduced any evidence that a special criminal tribunal was called in this case. The only thing referred to in Plaintiff's Complaint that even approaches the establishment of a tribunal is the board within the prison that reviews inmate complaints. This certainly is not a criminal tribunal, as it does not hear criminal cases or convict inmates of crimes. Any claim under Article I, § 15 of the Pennsylvania Constitution, therefore, also fails as a matter of law.

Restatement (Second) of Torts

Finally, Plaintiff brings charges of negligence under the Restatement (Second) of Torts § 282. To prevail on a negligence claim under Pennsylvania law, the plaintiff must establish that the defendant had a duty to conform to a certain standard of conduct, that the defendant breached this duty, and that this breach caused an injury to the plaintiff. Macina v. McAdams, 421 A.2d 432, 434 (Pa. Super. Ct. 1980). Under Pennsylvania's Tort Claims Act, no local agency can be liable for damages on account of an injury caused by its, or one of its employees, negligence, 42 Pa. Stat. Ann. § 8541 (West 2007), unless the injury falls into one of eight defined categories, none of which are implicated by the facts of the present case. Id. § 8542.

Further, an employee of a local agency can only be liable as an individual to the extent that the agency would be liable, so long as the employee was acting within the scope of his or her office or duties.  Id. § 8545.  Although "wilful misconduct" is never considered to be acting within the scope of an employee's duties, in order to demonstrate that a defendant was engaged in wilful misconduct, the plaintiff must show that the "actor desired to bring about the result that followed, or at least that he was aware that it was substantially certain to ensue."  Evans v. Phila. Transp. Co., 212 A.2d 440, 443 (Pa. 1965).

Plaintiff argues that Defendants were negligent in not following municipal policy when they removed him from his law library job, ordered a strip and cavity search, charged him with a "major infraction" rather than a "minor infraction" for his gambling offense, and failed to promptly review his placement in administrative segregation.  First, as noted above, none of the grounds for municipal tort liability are implicated here, and any claim against the City of Philadelphia cannot proceed.  In addition, claims against the individual Defendants can only proceed if Plaintiff can establish wilful misconduct.  Turning to the individual Defendants, we are unsure of from where the duty in this case arises.  It appears that Plaintiff is attempting to bring a tort claim against employees for failing to follow their employer's policies and for constitutional violations.

26

Plaintiff, however, cannot bring a separate, state law tort claim based on a duty to not violate his constitutional rights. The remedy in such a situation is to bring an action pursuant to 42 U.S.C. § 1983, alleging the constitutional violation. Plaintiff has done so in this case, and cannot duplicate these claims by bringing a state law tort claim as well. Further, an employer's policies do not create the standard of conduct required in an employee's relations with third parties for the purposes of tort law. Although a violation of an employer's policies may give rise to an actionable tort if the defendant did not act as a reasonable person and the plaintiff was injured, a violation of an employer's policies is not per se evidence of negligence.

Further, Plaintiff simply has not demonstrated that any wilful misconduct occurred. First, as discussed above, Plaintiff has not shown that his removal from his law library job was unjustified. This removal, therefore, cannot accurately be described as negligent. In addition, as discussed above, none of the named Defendants were even alleged to be involved in Plaintiff's strip or cavity search, and cannot be held liable for any wilful misconduct that may have occurred. Further, Plaintiff has simply not produced any evidence to allow this Court or a jury to conclude that anything other than a pure mistake resulted in Plaintiff being charged with a "major" offense. Finally, there is no ground to conclude that the length of time before the

completion of the review of Plaintiff's placement in
administrative segregation was unjustified.  Plaintiff's
allegations, therefore, are sufficient, at best, to demonstrate
the existence of a mistake made on the part of Defendants, but
there is no factual basis for finding that these mistakes give
rise even to a negligence action, much less a negligence action
in a situation that demands wilful misconduct.  In these
circumstances, summary judgment is appropriate.

## Conclusion

For the reasons discussed at length above, Defendants'
Motion for Summary Judgment will be granted.  No genuine issues
of material fact remain to be tried, and Defendants are entitled
to judgment as a matter of law on all of Plaintiff's allegations.